IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT E. GORDON,

        Petitioner,

vs.

T. FELKER, Warden, *et al.*,

        Respondent.

Case No. 2:06-cv-00916 JKS

ORDER

      Petitioner, a state prisoner represented by counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to challenge his 2002 convictions and sentence for inflicting corporal injury on a spouse and robbery. He alleges relief is warranted on the grounds that: (1) the prosecutor violated his due process rights by introducing evidence at trial of a restraining order the victim had obtained against the Petitioner; and (2) the consecutive sentences imposed by the trial court violated the Sixth Amendment because the trial court was required to make factual findings to impose the sentences consecutively. Docket No. 16 (First Amd. Pet.). Respondent asserts that some of Petitioner's arguments are procedurally barred and that all of them are without merit. Docket No. 21 (Resp.). Petitioner did not file a Traverse. The Petition shall be denied for the reasons set forth below.

## BACKGROUND

      In an unpublished opinion filed on June 9, 2004, the California Court of Appeal, Third Appellate District, summarized the factual background of the offense and trial:

> Defendant and the victim began dating in November 2000. Within a few weeks, defendant had moved in with the victim, who rented a room in a duplex she shared with two other families. Defendant and the victim were married on January 1, 2001. On February 5, 2001 (the February 5 incident), defendant started an argument by informing the victim that his cousin had referred to the victim and her mother as "bitches." Defendant's assault became physical when he struck the victim in the head with his closed fist, knocked her unconscious by driving her into a wall, struck her repeatedly, and prevented her from breathing by sitting on her chest. The victim

managed to save herself by breaking a glass over defendant's head. The victim received treatment at the hospital for her injuries. As a result to this attack, the victim filed a petition for annulment on March 29, 2001, had the petition served on defendant, and informed him that there was a restraining order in effect.

Less than one week later, on April 4, 2001, (the April 4 incident) defendant entered the victim's duplex at 2:00 a.m. and went to her bedroom, where she was sleeping with Andre Patterson, her ex-boyfriend. The victim and Patterson awoke and began to argue with defendant. Defendant picked up the victim's purse and looked through it, saying he needed money. The victim attempted to grab her purse. Defendant pulled out a knife and swung it at the victim, cutting her several times. The most serious wound was to the victim's finger and hand, which were cut when she blocked defendant's attempt to cut her throat. Defendant then fled, taking the victim's purse with him. Defendant found the keys to the victim's Cadillac in the purse, saw the Cadillac parked nearby, and drove it away. The car was later found burned and left on a street in the neighborhood.

The victim's account was corroborated by another resident of the duplex, Krystal Johnson, who witnessed defendant attack the victim and run out with her purse. Both Johnson and the victim testified that defendant was alone during the April 4 incident.

Sharlie Forberg testified for the defense. She testified she accompanied defendant to the victim's residence on April 4, 2001, so he could retrieve some of his belongings. She witnessed defendant and Patterson fighting in the bedroom, and saw defendant grab a knife in order to defend himself. Forberg testified that the victim must have been cut when Patterson refused to stop fighting. Defendant and Forberg fled from the apartment when Patterson grabbed a gun and pointed it at defendant. Defendant took neither the victim's purse nor her Cadillac, since they left in Forberg's car. Forberg admitted that in 1997 she had pled guilty to misdemeanor assault with force likely to cause great bodily injury. She also acknowledged that she cared deeply for defendant and had visited him in jail 36 times prior to the trial.

. . . .

During his examination of several witnesses, the prosecutor elicited (without objection) testimony that the victim had obtained a restraining order against defendant. The initial reference to a "restraining order" came during the victim's direct testimony regarding the April 4 incident. While describing the argument between defendant and Patterson, she volunteered that Patterson told defendant he should leave because the victim had a restraining order against him. The victim later testified she had obtained a restraining order against defendant. When the prosecutor asked the victim how she felt when she obtained the restraining order, the court sustained a defense objection to relevance grounds.

The prosecutor then asked when the victim had obtained the restraining order. The victim could not recall the date, and was permitted to review (without objection) a copy of the order to refresh her recollection. The victim stated she had obtained the restraining order on April 12, 2001, (the April 12 order).

The second defense objection was made (and sustained) when the prosecutor asked the victim about the contents of the April 12 order.

Immediately thereafter the prosecutor asked the victim whether she had obtained a restraining order based on defendant's conduct both on February 5 and April 4. The court sustained an objection on relevance grounds.

Outside the presence of the jury, the prosecutor informed the court that the purpose of his questions was "to admit the fact the victim filed a restraining order. Even thought it is after the fact of April 4th, it is still relevant, I think, to show how

serious the incident was for her and her state of mind as a result of the assault that led her to get a restraining order." Defense counsel responded: "The only problem with that is, it is just all hearsay on her part. After the fact, she's angry, she's hurt, she's injured. She's already testified to everything." The court sustained an objection to the evidence without prejudice to revisiting it "at some later point."

The next defense objection was made (and sustained on hearsay grounds) when the prosecutor asked the victim if she thought the restraining order was in effect prior to the April 4 incident.

The prosecution then elicited testimony from the victim (without objection) that defendant had told her he knew he could not be around her.

The next reference to the restraining order came during the testimony of Krystal Johnson, who lived with the victim. In response to a question whether the victim had reconciled with defendant after the February 5 incident, Johnson testified instead that the victim had obtained a restraining order against defendant. When Johnson began to speculate on why the order was obtained, the court sustained defense counsel's objection.

The final testimonial reference to the restraining order came during the testimony of the sheriff's deputy who had investigated the April 4 incident. The deputy testified (without objection) that the victim had shown him a copy of a restraining order. Defense counsel interposed (and the court sustained) an objection to the deputy testifying concerning the contents of the order.

The court granted a defense motion to exclude from the jury a copy of the summons and annulment petition filed prior to the April 4 incident, as well as the April 12 order, which was obtained after the April 4 incident. The court reasoned that the victim had already testified in court concerning these documents, and that submission of the documents themselves would be unduly prejudicial.

The jury convicted defendant of robbery (count two) and the two counts of inflicting corporal injury on a spouse (counts six and seven). The jury found true the special allegations as to counts two and six, but not as to count seven. Defendant was acquitted of counts one, three, five, and eight. The jury deadlocked on count four, which was thereafter dismissed.

The court sentenced defendant to an aggregate 10-year prison sentence, consisting of a base term of four years on the robbery conviction (with a four-year enhancement for infliction of great bodily injury), to run consecutively to a one-year term on the conviction for inflicting corporal injury upon a spouse (with a one-year enhancement for the personal use of a deadly weapon). The term for count six was stayed pursuant to section 654.

*People v. Gordon*, No. C041466, Slip op. at 2-7 (Cal. Ct. App. June 9, 2004).

Petitioner appealed his convictions arguing the prosecutor committed misconduct by introducing evidence of the restraining order. The Court of Appeals affirmed the convictions in a reasoned opinion issued June 9, 2004. *Id*. Petitioner sought review before the Supreme Court of California, arguing that the Court of Appeals erred in holding that he was not denied due process by the alleged prosecutorial misconduct, and that he was denied his Sixth Amendment right to a jury trial when the trial court made factual findings to support the imposition of consecutive sentences. The Supreme Court of California denied review "without prejudice to any relief to which defendant

3

might be entitled after this court determines in *People v. Black*, S126182, and *People v. Towne*, S125677, the effect of *Blakely v. Washington* (2004) ___ U.S. ___, S.Ct. 2531, on California law." *People v. Gordon*, No. S126370, Slip op. (Cal. Aug. 25, 2004). The initial federal petition was filed on October 16, 2006. Docket No. 11. The First Amended Petition, currently before the Court, was filed May 23, 2007. Docket No. 16.

## LEGAL STANDARD

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). A federal writ is not available for an alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Where a state court has adjudicated the merits of a petitioner's claim, this Court, under AEDPA, may not grant relief unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id.* To qualify as "unreasonable," it must be objectively

unreasonable, a substantially higher threshold than merely incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

Clearly established federal law refers only to the holdings of the Supreme Court's decisions in effect at the time of the relevant state-court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). In the absence of an applicable holding of the Supreme Court, it cannot be said that a state court decision is contrary to or an unreasonable application of clearly established federal law. *See id*. at 77. Finally, even if the AEDPA standard is satisfied, the Court cannot grant relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2326-27 (2007) (*Brecht* standard continues to apply after enactment of AEDPA).

In applying this standard, a federal district court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

**DISCUSSION**

I - Prosecutorial Misconduct

Petitioner argues his right to due process of law was violated when the prosecutor committed misconduct by eliciting testimony referring to a temporary restraining order the victim claimed to have against him. Docket No. 16 at 10-16. Respondent contends this claim must be denied because it is both procedurally barred and meritless. Docket No. 21 at 6-11.

*1. Procedural default*

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338, (1992). If a petitioner has procedurally defaulted, we do not review the claim unless the petitioner "can establish cause and prejudice or that a miscarriage of justice would result in the absence of our review." *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996).

5

In this case, the Court of Appeals found that Petitioner waived his prosecutorial misconduct claim because he failed to provide "argument or citation to authority to establish that the evidence was inadmissible under some legal theory." *Gordon*, No. C041466, Slip op. at 7. This rule is independent of the federal question and at the time it was invoked by the Court of Appeals was firmly established and regularly followed. *See, e.g., Kuperman v. Assessment Appeals Bd. No. 1*, 137 Cal. App. 4th 918, 931, 40 Cal. Rptr. 3d 703, 711 (Cal. Ct. App. 2006); *Atchely v. City of Fresno*, 151 Cal. App. 3d 635, 647, 199 Cal. Rptr. 72, 80 (Cal. Ct. App. 1984). Petitioner has failed to dispute Respondent's showing that his claim was denied based on an independent and adequate state procedural bar. Nor has Petitioner alleged either cause, prejudice, or miscarriage of justice should this Court deny review. Petitioner's first claim is accordingly dismissed.

*2. Merits*

Even if Petitioner's prosecutorial misconduct claim was not procedurally barred, it would fail on the merits. Prosecutors have a special duty as the representative of the State: "He may prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). A writ of habeas corpus will not issue for prosecutorial misconduct unless the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). In order to be entitled to habeas relief, a petitioner must demonstrate that he suffered actual prejudice because the prosecutor's comments had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 636.

The Court of Appeals addressed this claim on direct review:

> Regarding the claim that the prosecutor committed misconduct by introducing "inadmissible evidence" that the victim obtained a restraining order, defendant provides no argument or citation to authority to establish that the evidence was inadmissible under some legal theory. Hence, he has waived the claim that the evidence was inadmissible. (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 ["Where a point is merely asserted by appellant's counsel without any argument of or authority for the proposition, it is deemed to be without foundation and requires no discussion by the reviewing court"]) and thus he has waived his claim of misconduct.
>
> In any event, evidence that the victim obtained a restraining order against defendant after she was attacked was relevant to the victim's credibility because, by demonstrating she acted like a victim, it dispelled the defense argument that there was "no real threat there" since this was just a situation of "mutual combat" in which the victim was just as much at fault, and the victim was lying when she accused defendant of attacking and threatening her. The Supreme Court summarized the

6

applicable rules regarding the admissibility of a victim's report of a crime in *People v. Brown* (1994) 8 Cal.4th 746: "[E]vidence of a victim's conduct following the alleged commission of a crime, including the circumstances under which he or she did (or did not ) promptly report the crime, frequently will help place the incident in context, and may assist the jury in arriving at a more reliable determination as to whether the offense occurred. When introduced for that purpose, evidence of the circumstances surrounding a victim's reporting or disclosure of an alleged crime clearly falls within the bounds of 'relevant evidence,' i.e., evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action' (Evid. Code, § 210.) [¶] Of course, only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule. [Citation.] (Id. at p. 760.) Therefore, the evidence that the victim applied for a restraining order was relevant and admissible even though the trial court ruled otherwise. (Ibid.) Because the evidence was admissible, the prosecutor did not commit misconduct in introducing it.

>    Although the prosecutor sought on several occasions to elicit testimony concerning the contents of the restraining order, the trial court properly sustained objections to those questions. It follows that defendant was not denied due process of law.

*Gordon*, No. C041466, Slip op. at 8-9.

Petitioner's argument presupposes the evidence introduced was inadmissible. The California Court of Appeal found that the evidence showing the victim secured a restraining order was relevant and admissible. *Id*. at 9. We do not review a state's application of its own law *de novo*. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Only where no permissible inference can be drawn from the evidence will due process be offended by its introduction. *See, e.g., Houston v. Roe*, 177 F.3d 901, 910 n.6 (9th Cir. 1999). As explained by the California Court of Appeal, the evidence at issue here was relevant to the victim's credibility. Accordingly, this Court cannot say the state court's decision was an unreasonable application of clearly established federal law.

II - Sixth Amendment Right to a Jury Trial

Citing *Blakely v. Washington*, 542 U.S. 296 (2004), Petitioner argues his consecutive term violated his Sixth Amendment right to a trial by jury. Docket No. 16 at 17-23. Specifically, he alleges the trial court erred in sentencing Petitioner to a consecutive term because it did so in reliance on the fact that the counts were independent of one another, a fact not found by the jury. This argument is foreclosed by the Supreme Court's recent decision in *Oregon v. Ice*, No. 07-901, 2009 U.S. LEXIS 582, at *7-8 (U.S. Jan. 14, 2009) (Sixth Amendment does not prohibit judges from finding facts in exercising their discretion to sentence a defendant to consecutive sentences).

## CONCLUSION

Petitioner's prosecutorial misconduct claim is both procedurally barred and meritless. Petitioner's *Blakely* claim is also without merit. Further, as no reasonable jurist could debate whether the petition should have been resolved in a different manner, the Court declines to issue a Certificate of Appealability.[1]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;

2. The Court declines to issue a Certificate of Appealability; and

3. The Clerk shall enter judgment accordingly.

Dated this the 4th day of February 2009.

                                              /s/ James K. Singleton, Jr.
                                              **JAMES K. SINGLETON, JR.**
                                              United States District Judge

---

[1] A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).